# United States Court of Appeals
## For the First Circuit

---

No. 06-2342

UNITED STATES OF AMERICA,

Appellee,

v.

JERMAINE N. POLITANO,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Torruella and Lynch, Circuit Judges,
and Fusté,[*] District Judge.

---

Albert F. Cullen, Jr., for appellant.
Leah B. Foley, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, were on brief for
appellee.

---

April 3, 3008

---

[*] Of the District of Puerto Rico, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  On May 3, 2006, Jermaine N. Politano pled guilty to engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).  At sentencing, Politano requested, and the Government recommended, a twelve-month term of incarceration.  The district court calculated Politano's Guidelines Sentencing Range ("GSR") to be twelve to eighteen months, based on an offense level of 13, but proceeded to sentence Politano to twenty-four months' incarceration.  Politano now appeals his sentence.  After careful consideration, we affirm the sentence.

## I.  Background

In April 2005, Politano sold three guns and approximately 100 rounds of ammunition to a confidential witness.  On August 24, 2005, Politano was indicted on one count of engaging in the business of dealing in firearms without a license.  Politano subsequently pled guilty to the charges in the indictment.

At sentencing, the district court adopted the presentence report's ("PSR") recommended Guidelines offense level of 13.  To arrive at that offense level, the court began with a base offense level of 12 for "prohibited transactions involving firearms or ammunition," U.S.S.G. § 2K2.1(a)(7), added two levels because the offense involved three to seven firearms, id. § 2K2.1(b)(1)(A), and two more levels because at least one firearm "was stolen," id. § 2K2.1(b)(4)(A).  It then reduced the offense level by three for

acceptance of responsibility to arrive at the offense level of 13. Id. § 3E1.1 (a) & (b). The court also accepted the PSR's determination that the defendant had a criminal history category I, and that his advisory GSR was therefore twelve to eighteen months.

The district court went on to invite the parties to address the sentencing factors set forth in 18 U.S.C. § 3553(a) and suggest an appropriate sentence. The Government stated that it was concerned about "what will happen when Mr. Politano is discharged" and that it was important to continue to detain Politano until the Probation Department could devise a program to prevent recidivism. The Government recommended a sentence of twelve months' incarceration, followed by a three-year term of supervised release.

The district court asked the probation officer about certain unresolved criminal matters in Brockton District Court.[1] The probation officer stated that the cases were in fact unresolved and that default warrants had been issued because Politano, being in federal custody, was unable to appear in those cases. Counsel for Politano said he would "move those cases along" once he had the opportunity to do so.

---

[1] Politano has "two open matters" in Brockton District Court. He faces charges for assault and battery, assault and battery with a dangerous weapon, and malicious damage to a motor vehicle. He also faces charges in the same court for disturbing the peace and disorderly conduct. As of the filing of this appeal, Politano had not appeared in Brockton and "technical warrants" had been issued.

Politano told the court that he agreed with the Government's recommendation of twelve months' incarceration. He noted that he agreed it was "necessary for a plan to be in place" with the Probation Department before Politano's release. Politano also emphasized that he had only one prior conviction for resisting arrest. Finally, he noted that under the supervision of the Probation Department, Politano could "start working and lead a productive life."

At that point, the district court began its consideration of the sentence, first addressing the "nature and circumstances" of the offense. The district court explained that, pursuant to 18 U.S.C. § 3553, it would consider "the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct both specifically and generally, and to protect the public from further crimes by the defendant." The court further stated:

> I think any reader of the daily newspapers is aware that the illegal trafficking of firearms at the street level is a significant contributing factor in what, without exaggeration I think, can be called an epidemic of handgun violence in communities within this district. Not only do guns sold illegally in this way directly facilitate crimes of violence, but they also indirectly facilitate other crimes, including drug offenses. And so I think in light of these considerations, it is necessary to regard this "engaging in the business," I emphasize that, of selling firearms illegally to be a very serious offense in this district at this point in time. And so I think it has to be punished

by a sentence which reflects the seriousness, promotes respect for it in compliance with the law, and has an effect both specifically but also a general deterrence effect as advice to others who might commit it.

Another factor is the history and characteristics of the defendant. And it is true he is a young man. He has a very brief countable criminal history. There are more encounters with the law enforcement than are countable under the Guidelines. And I think when considered in conjunction with the defendant's social history, it is, I think, fair to say that the Guidelines somewhat underestimate or undercount the likelihood of recidivism, which is a concern.

The district court then sentenced Politano to twenty-four months' incarceration. The court had not advised the parties beforehand that it was considering a sentence above the Guidelines recommendation.

On appeal, Politano challenges the sentence on two grounds. First, he argues that the sentence is unreasonable. Second, he argues that the sentence is defective for lack of notice.

## II. **Discussion**

### A. **Reasonableness**

We review a district court's sentence for reasonableness, which involves a procedural as well as a substantive inquiry. See Gall v. United States, 128 S. Ct. 586, 597 (2007); United States v. Martin, No. 06-1983, 2008 WL 748104, at *4-5 (1st Cir. Mar. 21, 2008).

We first determine whether the district court made any procedural errors "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." Gall, 128 S. Ct. at 597. Where the district court has committed no such error, we next turn to the substantive reasonableness of the sentence actually imposed and review the sentence for abuse of discretion. See Martin, 2008 WL 748104, at *5; see also Gall, 128 S. Ct. at 594 ("Our explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions." (citing United States v. Booker, 543 U.S. 220, 260-62 (2005))); Rita v. United States, 127 S. Ct. 2456, 2465 (2007) ("[R]easonableness review merely asks whether the trial court abused its discretion.").

In view of the Supreme Court's recent decision in Gall, we emphasize that the broad discretion afforded to the district court is paramount: after the court has calculated the GSR, "sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." Martin, 2008

WL 748104, at *4  (quoting <u>United States</u> v. <u>Vega-Santiago</u>, No. 06-1558, 2008 WL 451813, at *3 (1st Cir. Feb. 21, 2008)(en banc)). "[T]he linchpin of a reasonableness sentence is a plausible sentencing rationale and a defensible overall result." <u>Id.</u> at *8 (citing <u>United States</u> v. <u>Jiménez-Beltre</u>, 440 F.3d 514, 519 (1st Cir. 2006) (en banc)).

After properly calculating the GSR, the district court in this case sentenced Politano to a term above the recommended range based on the § 3553(a) factors.  Our focus is, therefore, directed at whether the district court provided a sufficient explanation for its variance and whether the overall result is defensible.  <u>Id.</u>, at *4 ("The Court's reasons for deviation should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender; must add up to a plausible rationale; and must justify a variance of the magnitude in question.").

In imposing its sentence, the district court noted that the crime of engaging in the business of dealing in firearms without a license is "a very serious offense in [the District of Massachusetts] at this point in time," specifically because it "directly facilitate[s] crimes of violence, . . . [and] indirectly facilitate[s] other crimes, including drug offenses" in the District of Massachusetts.  Consequently, the district court opined, Politano's crime "ha[d] to be punished by a sentence which

reflects [the] seriousness [of the offense], promotes respect for it in compliance with the law, and has an effect both specifically but also a general deterrence effect as advice to others who might commit it." Thus, in considering the factors set forth in § 3553(a),[2] the district court thought that the community-specific characteristics in the District of Massachusetts made Politano's offense more serious and the need for deterrence greater than that reflected by the Guidelines.

Considerations regarding the "seriousness of the offense" and "adequate deterrence" are both factors which the district court is required to consider. See 18 U.S.C. § 3553(a)(2)(A) & (B). Politano's challenge is not that the district court took those factors into account, but that the court's explanation was flawed because it relied on "generalized reports" rather than individual conduct. The argument is misconceived. Pre-Booker, this circuit had held that consideration of local community characteristics directly contravened the Sentencing Commission's policy choice "to dispense with inequalities based on localized sentencing responses." United States v. Aguilar-Pena, 887 F.2d 347, 352 (1st Cir. 1989). We concluded that Congress could not have intended for "a district court [to] override the guidelines merely because the

---

[2] Specifically, the district court considered the need for the sentence imposed "to reflect the seriousness of the offense" and "to promote respect for the law," 18 U.S.C. § 3553(a)(2)(A), and "to afford adequate deterrence to criminal conduct," id. § 3553(a)(2)(B).

crime was perpetrated locally." Id. at 351-52. After Booker, those Guidelines are no longer mandatory. Furthermore, the Supreme Court's decision in Kimbrough "opened the door for a sentencing court to deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission." Martin, 2008 WL 748104, at *9 (citing Kimbrough, 128 S. Ct. at 574-75); see also Rita, 127 S. Ct. at 2465 (allowing a district to find that "the Guidelines sentence should not apply, perhaps because . . . the case at hand falls outside the 'heartland' to which the commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." (emphasis added) (citation omitted)).

Post-Booker, it is now apparent that the district court has the discretion to take into account all of the circumstances under which Politano committed the offense, including the particular community in which the offense arose. In considering the characteristics of that community, the district court has the authority to conclude that the impact of this particular offense is more serious than that reflected by the Sentencing Commission. Indeed, the § 3553(a) factors expressly provide for consideration of general deterrence: section 3553(a)(2)(B) states that "[t]he court, in determining the particular sentence to be imposed, shall

consider the need for the sentence imposed to afford adequate deterrence to criminal conduct." General deterrence is about preventing criminal behavior by the population at large and, therefore, incorporates some consideration of persons beyond the defendant. See U.S.S.G. ch. 4, pt. A, introductory cmt. ("General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." (emphasis added)). In this case, the district court expressly considered the ways in which Politano's firearms offense was more serious and harmful within this specific community. Cf. United States v. Cavera, 505 F.3d 216, 223 (2d Cir. 2007) (vacating the sentence because "[t]he district court does not purport to establish that Cavera's crime was itself more harmful, but only that his crime falls within a category of offenses (gun crimes in densely populated areas) that the district court viewed as more serious, on average, than gun crimes in less urban communities"). Therefore, to the extent the district court's explanation is grounded in "case specific considerations," we accord a "respectful deference" to its "fact-intensive sentencing decisions." Martin, 2008 WL 748104, at *4, 8-9.

The district court also relied on Politano's "unresolved charges" in Brockton District Court to enhance his sentence. Specifically, the district court stated, "[t]here are more

-10-

encounters with law enforcement than are countable under the Guidelines. And I think when considered in conjunction with the defendant's social history, it is, I think, fair to say that the Guidelines somewhat underestimate or undercount the likelihood of recidivism, which is a concern." Specifically, the district court was concerned about outstanding warrants for a charge of assault and battery with a dangerous weapon, and for charges of disturbing the peace and disorderly conduct.

Sections 3553(a)(1) and 3553(a)(2)(c) invite the district court to consider, broadly, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." In view of these considerations, the district court acted within its discretion in finding that Politano's likelihood of recidivism was underestimated in the Guidelines.[3] See United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006); cf. United States v. Solís-Bermúdez, 501 F.3d 882, 886-87 (8th Cir. 2007) (discussing the district court's discretion post-Booker to decline an upward departure under U.S.S.G.

---

[3] The district court's determination of the appropriate sentence in this case came after consideration of several § 3553(a) factors. This is not a case in which the resulting variance was due solely to a prior arrest or outstanding charge. In such a case, more explanation may be required. See United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006).

§ 4A1.3(a), but apply an upward variance under § 3553(a)(1) and (a)(2)(c) on the basis of criminal history).

Moreover, in concluding that the district court's sentence is reasonable, we recognize that "sentencing decisions represent instances in which the whole sometimes can be greater than the sum of the constituent parts." Martin, 2008 WL 748104, at *8. In this case, after considering the PSR and the arguments of counsel, the district court concluded that, in view of the § 3553(a) factors, the GSR fell below that which was appropriate for Politano's offense and circumstances. The district court was well within its discretion in concluding that a six-month increase to the sentence was merited.

### B. Lack of Notice

Politano next argues that the sentence should be vacated because the district court failed to give advance notice that it intended to impose a sentence above the Guidelines range. In a recent decision, we rejected the applicability of the Federal Rule of Criminal Procedure Rule 32(h) notice requirement to post-Booker variances. See Vega-Santiago, 2008 WL 451813.[4] We held that a judge must provide advance notice or grant a continuance only in those cases where the district court "propos[ed] to adopt a

---

[4] While I continue to disagree with the outcome of Vega-Santiago, I am compelled to follow this rule until the Supreme Court rules otherwise. See United States v. Irizarry, 458 F.3d 1208 (11th Cir. 2006), cert. granted, 128 S. Ct. 828 (2008).

variance sentence relying on some ground or fact that would unfairly surprise competent and reasonably prepared counsel."[5] Id. at *4. Our inquiry is, therefore, limited to whether the district court's articulated grounds for its variance would have unfairly surprised competent and reasonably prepared counsel.

As described above, the district judge in this case relied on three grounds for varying from the GSR: the seriousness of the crime, the need for deterrence, and the adequacy of the Guidelines sentence in addressing Politano's risk of recidivism. All three fall within the "[g]arden variety considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth [which] should not generally come as a surprise to trial lawyers who have prepared for sentencing." Id. at *3. We are unpersuaded that the facts of this case present an exceptional circumstance.

The district court properly considered the seriousness of the crime, the need for deterrence, and Politano's likelihood of recidivism within its discussion of the § 3553(a) factors. Counsel are aware that post-Booker, the district court is required to

---

[5] In a letter filed pursuant to Fed. R. App. P. 28(j), Politano asserts that the district court should have provided notice under Rule 32(h) because "the court's sentence contained an actual departure for which counsel was not notified in advance." We decline to consider this untimely argument. Politano concedes that this argument was not made on appeal, and we accordingly deem it to be waived. See, e.g., Sleeper Farms v. Agway, Inc., 506 F.3d 98, 104 (1st Cir. 2007).

consider and weigh each of the § 3553(a) factors.  See Gall, 128 S. Ct. at 596-97.  The district court in this case simply considered and applied those factors to this case.  Nothing in the district court's discussion of these factors indicates that they are beyond the scope of what reasonably prepared counsel should have been prepared to argue.[6]  We are hard-pressed to see how the district court's sentence on these grounds surprised counsel unfairly.

### III.  Conclusion

For the foregoing reasons, the district court's sentence is affirmed.

**Affirmed**.

---

[6]  With respect to the consideration of Politano's criminal history, even under Rule 32(h), notice is only required for those grounds not identified in the PSR or one of the party's prehearing submissions.  Fed. R. Crim. P. 32(h).  Politano's criminal history was clearly outlined in the PSR and counsel admits to being "well aware of Mr. Politano's record and the potential effects it could have on the sentence."